## STATE OF CONNECTICUT *v.* LLOYD F. MCCARTHY II
## (AC 19738)

Foti, Schaller and Stoughton, Js.

Argued January 10—officially released May 15, 2001

*Lori Welch-Rubin,* for the appellant (defendant).

*Robert J. Scheinblum,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Mark Brodsky,* senior assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Lloyd F. McCarthy II, appeals from the judgment of conviction rendered after a jury trial. The jury found the defendant guilty of assault in the second degree with a motor vehicle in violation of General Statutes § 53a-60d[1] and of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 1997) § 14-227a (a) (1).[2] The defendant claims that the trial court improperly (1) failed to instruct the jury fully in accordance with the statutory

[1] General Statutes § 53a-60d (a) provides: "A person is guilty of assault in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes serious physical injury to another person as a consequence of the effect of such liquor or drug."

[2] General Statutes (Rev. to 1997) § 14-227a (a) provides: "Operation while under the influence. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

directive of § 14-227a (f),[3] (2) failed to limit the applicability of any negative inference that might have been drawn by the jury pursuant to § 14-227a (f) and (3) abused its discretion in failing to permit him to present the testimony of two expert witnesses, thereby depriving him of his constitutional right to present a defense. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On the evening of October 10, 1998, the defendant was driving his automobile on Route 4 approaching Route 167 in Farmington. The traffic signal that controlled that intersection was red for eastbound traffic as the defendant approached. In the eastbound lane, there were two automobiles, one behind the other, waiting for the signal to change. The defendant struck from behind the first of those vehicles, which was operated by Stephen Griswold, and pushed Griswold's vehicle into the rear of the next vehicle, which was operated by Michael Taylor. Griswold was temporarily paralyzed as a result of the collision. On December 15, 1998, Griswold underwent surgery to repair the damage caused by the injuries he had sustained in the collision.

Shortly after the collision, the defendant told Officer Gregory Blackington of the Farmington police department, who came to the scene of the accident, that he did not remember how fast he was driving or whether he had applied his brakes prior to the collision. Blackington observed that the defendant appeared to be "very

[3] General Statutes § 14-227a (f) provides: "Evidence of refusal to submit to test. In any criminal prosecution for a violation of subsection (a) or (b) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible provided the requirements of subsection (b) of said section have been satisfied. If a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a blood, breath or urine test."

disoriented" and that there were no skid marks on the roadway behind the defendant's automobile.

The defendant also spoke with Marshall Porter, another Farmington police officer who came to the accident scene. The defendant told Porter that he had reached down in his vehicle to pick up a cigar that he had dropped and did not recall whether he had seen the Griswold car in front of him before he struck it. Porter smelled alcohol on the defendant's breath and, when asked if he had been drinking, the defendant admitted that he had had "a couple." Furthermore, Porter noticed that the defendant slurred his speech, stared blankly and told him different versions of where he had been.

Porter then asked the defendant to perform field sobriety tests because he suspected that the defendant was intoxicated. After the defendant failed several of those tests, Porter concluded that he was under the influence of alcohol and arrested him. At the police station, Porter read to the defendant from an implied consent advisory form and explained that he would be asked to submit to a breath test. He also informed him of the consequences of his refusal to take the test. The defendant declined an opportunity to call an attorney and instead decided to call his brother for advice. Thereafter, the defendant refused to submit to the breath test.

Three other witnesses at the accident scene also observed that the defendant appeared to be intoxicated. The two occupants of the vehicle that was in front of Griswold's vehicle observed the defendant immediately after the collision and concluded that he was intoxicated. Another witness who observed the collision saw the defendant attempting to perform the field sobriety tests and also believed that he was under the influence of alcohol.

## I

The defendant first claims that the court improperly failed to instruct the jury fully in accordance with the statutory directive of § 14-227a (f). Specifically, he claims that the court failed to instruct the jury in the exact language of § 14-227a (f) that it "may or *may not*" draw a negative inference from the fact that he had refused to submit to the requested breath test. Further, he claims that the charge diluted the state's burden of proof as to a statutory element of the offense.

Section 14-227a (f) provides in relevant part that "[i]n any criminal prosecution for a violation of [operation while under the influence or operation while impaired], evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible [under certain conditions]. . . . If a case . . . is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a blood, breath or urine test." In that statute, the legislature has provided for a permissive inference that the jury may draw, as it deems fit, from evidence of the fact that the defendant refused to submit to a breath test.

In this case, the court charged the jury as follows. "In order to draw an inference, however, you must find that the state . . . proved the fact from which you are to draw the inference beyond a reasonable doubt. That is, the fact upon which the inference is to be drawn must be proven to your satisfaction beyond a reasonable doubt. Now, if you find that the state has sustained its burden, you may well pass on to the question of whether or not you will draw the inference, and you must also make a determination whether or not the inference is logical, reasonable and satisfies you beyond

a reasonable doubt of the existence of facts which you are asked to infer.

\* \* \*

"Now . . . [it has] been mentioned that the defendant was invited to take—asked to take a test—on an intoximeter . . . . And now, again, it's clear that the statute says that if you conclude from the evidence that the defendant refused to take this test . . . that's for you to determine whether or not the defendant refused to take the test. Now, if you come to that conclusion that he did refuse to take the test, then you can also conclude that the test would have been unfavorable to his position. . . . Or you could draw that inference— getting back to that inference that I had told before. But you first have to conclude whether or not he refused. If you find he didn't refuse, then you don't go on to that. Then there's nothing there for you to decide. But if you find that he did refuse the test, then you can draw this inference wherever it fits into your discussions or deliberations in the case."

After the charge, the defendant took an exception, stating that "the jury may be confused as to the inference that they may or may not draw from the alleged refusal. Respectfully, Your Honor, I believe that you stated that they conclude that it would have been unfavorable to his position and then, later on, you used the word inference. I would ask Your Honor to issue an additional charge on that and just highlight that it's really an inference and, in itself, legally, cannot lead to a conclusion of guilt."

The defendant's exception, whatever its intent, could not have alerted the court to the claim that the charge did not repeat the statutory language of § 14-227a (f). Nevertheless, we are able to consider the claim because a request to charge was made by the defendant in the statutory language.

The standard of review of jury instructions is well settled. "[A]n error in instructions in a criminal case is reversible error when it is shown that it is . . . reasonably *probable* for nonconstitutional errors that the jury [was] misled." (Emphasis in original; internal quotation marks omitted.) *State* v. *Stevenson*, 53 Conn. App. 551, 574, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999). A jury charge should not be critically dissected but, rather, should be considered as to its probable effect on the jurors in guiding them to a correct verdict and should be read as a whole. *State* v. *Rodriguez*, 60 Conn. App. 398, 406, 759 A.2d 123 (2000), cert. denied, 255 Conn. 928, 767 A.2d 103 (2001).

The court's instructions identified a permissive inference, which is a nonconstitutional claim. See *State* v. *Gerardi*, 237 Conn. 348, 360, 677 A.2d 937 (1996). The jurors were instructed that if they were satisfied beyond a reasonable doubt that the defendant had refused to take the breath test, only then could they draw an unfavorable inference. We conclude that the trial judge's instructions substantially complied with the statutory language and that it is not reasonably possible that the jury was misled.

## II

The defendant next claims that the court improperly failed to limit the applicability of the possible negative inference that might have been drawn pursuant to § 14-227a (f) to the claimed violation of § 14-227a (a) (1) when it instructed the jury: "But if you find that he did refuse the test, then you can draw this inference wherever it fits into your discussions or deliberations in the case."

The defendant concedes that he did not raise his claim before the trial court by excepting to the charge. He argues, however, that he is entitled to plain error review and cites *State* v. *Cooper*, 38 Conn. App. 661, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903

(1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996). In *Cooper*, the trial court permitted the jury to consider the results of a blood test to determine whether the defendant was guilty of operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) (1) and (2). Id., 662–63. Section 14-227a (d) specifically provides that the test result is admissible in a prosecution for a violation of § 14-227a (a) (1) "only at the request of the defendant," and it was conceded in *Cooper* that the defendant had not made such a request. Id., 672. This court granted review in that case because noncompliance with a mandatory statutory provision constitutes plain error, and this court concluded that the trial court's instruction constituted an extraordinary situation in which the error was so obvious that the fairness, integrity of and public confidence in the judicial process would be impaired were this court to fail to address the issue. Id., 673.

In this case, the court allowed the jury to draw whatever inference it chose to draw from the defendant's refusal to take the breath test "wherever it [fit] into [the jury's] discussions or deliberations." We find nothing in § 14-227a that prohibits evidence of consciousness of guilt, based on a defendant's refusal to take a breath test, from being considered in a prosecution for assault in the second degree with a motor vehicle in violation of § 53a-60d. That kind of evidentiary claim is not the type of extraordinary situation that permits plain error review. See *State* v. *Lacks*, 58 Conn. App. 412, 425, 755 A.2d 254, cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000). We therefore decline to review the defendant's claim.

III

The defendant claims finally that the court abused its discretion by failing to permit him to present the testimony of two expert witnesses, thereby depriving

him of his constitutional right to present a defense. He argues, specifically, that he was deprived of his constitutional right to present a defense when the court refused to permit Jeffrey Muttart, an accident reconstructionist, and James O'Brien, a physician, to testify concerning the effect a deployed air bag might have had if it had struck the defendant.

Outside the presence of the jury, Muttart testified that an air bag deploys at a speed of 190 to 200 miles per hour. The court refused to permit the defendant to proffer that testimony to the jury because, although there was evidence that the air bag in the defendant's vehicle had deployed, there was no evidence that it actually had struck the defendant. O'Brien also testified outside the presence of the jury. He, in fact, testified that as a result of experiencing or participating in an accident, a person could experience confusion. The court later allowed him to offer that testimony before the jury. During cross-examination outside the presence of the jury by the assistant state's attorney, O'Brien testified that he assumed that the air bag had deployed and struck the defendant, and that if he was asked if that could cause confusion, he would testify that it could. The defendant, however, did not seek to elicit that testimony from O'Brien at any time. The defendant now argues that the court prevented him from offering exculpatory evidence to explain the confusion he exhibited at the accident scene because he was not allowed to offer any testimony from Muttart and more detailed testimony from O'Brien.

A court's exercise of discretion in admitting expert testimony will not be disturbed on appeal unless its discretion has been abused or the error is clear and involves a misconception of the law. *Hines* v. *Davis*, 53 Conn. App. 836, 840, 731 A.2d 325 (1999). "Whether a proper foundation has been laid to support a hypothetical question is an issue of fact for the trial court. . . .

[W]here the admissibility of evidence depends upon a preliminary question of fact, to be determined by the court, its decision is not to be reversed unless there is clear and manifest error. (Citation omitted; internal quotation marks omitted.) *State* v. *Leroy*, 38 Conn. App. 282, 287, 661 A.2d 106, cert. denied, 235 Conn. 904, 665 A.2d 904 (1995). Furthermore, it is well settled that the confrontation clause and a defendant's constitutional right to present a defense do not give the defendant the right to unlimited cross-examination. See *State* v. *Valentine*, 255 Conn. 61, 71, 762 A.2d 1278 (2000).

In the present case, because there was no evidence that the air bag actually had struck the defendant, we cannot find that the court abused its discretion when it excluded evidence of the speed at which the air bag deployed. In any event, the defendant was permitted to offer evidence that merely being involved in an accident might cause confusion. The defendant, therefore, was allowed to present exculpatory evidence to the jury to explain his confusion at the accident scene and was not denied his constitutional right to present a defense. We conclude, therefore, that the court did not abuse its discretion when it limited the testimony of the defendant's two expert witnesses.

The judgment is affirmed.

In this opinion the other judges concurred.