# STATE OF CONNECTICUT *v.* GREGORY S. SEEKINS
## (AC 28830)

Flynn, C. J., and Harper and McDonald, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 8, 2009—officially released August 10, 2010

*Carlos E. Candal*, special public defender, for the appellant (defendant).

*Melissa Patterson*, deputy assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Susan W. Hatfield*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Gregory S. Seekins, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes §14-227a (a) (1). On appeal, the defendant argues that the court improperly denied his request to add language to the court's jury instruction

under § 14-227a (e)[1] that the jury might draw an inference from the refusal of the police to conduct a Breathalyzer test after the defendant requested it. We affirm the judgment of the trial court.

In considering the propriety of a jury instruction, an appellate court considers the evidence in the record before the jury most favorably to giving the instruction. *State* v. *Carter*, 232 Conn. 537, 546–47, 656 A.2d 657 (1995).

With *Carter* in mind, we recount the following evidence the jury heard at trial. On the early morning of April 29, 2005, Officer Douglas Gamache, of the University of Connecticut police department in Storrs, while on patrol, observed the defendant's vehicle traveling with a broken tail light. Gamache followed the defendant's vehicle and observed that it was traveling forty-five miles per hour in a thirty mile per hour zone. Gamache also noticed that the defendant's vehicle drove very slowly around a slight turn and veered off to the right side of the roadway, although the vehicle did not veer off the pavement or into another lane of travel. At 12:40 a.m., Gamache stopped the defendant's vehicle and saw that the defendant's eyes were red and glassy and that his speech was slurred. Gamache also noticed that the car smelled of alcohol, although the defendant denied having consumed alcohol that night.

Gamache then asked the defendant to exit his vehicle to perform field sobriety tests, which Gamache believed

---

[1] General Statutes § 14-227a (e) provides: "In any criminal prosecution for a violation of subsection (a) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible provided the requirements of subsection (b) of said section have been satisfied. If a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a blood, breath or urine test."

he had failed. Thereafter, at 12:56 a.m., Gamache, concluding that the defendant was intoxicated, placed the defendant under arrest on a charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs and transported him to the University of Connecticut police headquarters. At 1:20 a.m., in the presence of a video camera, Gamache advised the defendant of his *Miranda* rights.[2] Then at 1:27 a.m., Gamache read to the defendant an advisory regarding an operator's implied consent to take a Breathalyzer test and the consequences of refusing to take the test. Gamache advised the defendant that he was being requested to submit to a Breathalyzer test and that his driver's license would be suspended if he refused to submit to that test.

The defendant stated that he would not do anything until he called an attorney and had an attorney present. Gamache offered the defendant an opportunity to contact his attorney and permitted the defendant to speak with his father by telephone while his father located an attorney's telephone number. The defendant repeatedly stated that he would not do anything without an attorney present. Because the defendant was ultimately unable to contact his attorney by calling his office at 1:48 a.m., Sergeant Scott Sleeman of the University of Connecticut police department and Gamache witnessed the defendant's refusal to blow into the Breathalyzer machine. This was recorded on a form A-44,[3] which Sleeman signed as required by law.[4]

---

[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] "The A-44 form is used by the police to report an arrest related to operating a motor vehicle under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." (Internal quotation marks omitted.) *State* v. *Bereis*, 117 Conn. App. 360, 368 n.7, 978 A.2d 1122 (2009).

[4] General Statutes (Rev. to 2005) § 14-227b (c) provides in relevant part: "If the person arrested refuses to submit to such test or analysis . . . the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license or, if such person is a nonresident, suspend the nonresident operating

The defendant later stated that he would take the test, but Gamache did not administer it, stating that it was too late. The defendant also wanted his willingness to blow into the Breathalyzer machine documented before he was released at 2:44 a.m. The defendant's request to take the Breathalyzer was within two hours of when the defendant operated his vehicle, and the test would have been valid if Gamache had then given the defendant the test.

Following the evidence at trial, the court informed counsel of the court's proposed jury instruction that evidence of the defendant's refusal to submit to the Breathalyzer test had been introduced and that if the jury concluded that the defendant had refused to take the test, it could draw any reasonable inference that followed from that fact. The defendant orally asked the court to instruct the jury that if the jury found that the police had refused to administer the Breathalyzer test after he had requested the test, the jury could draw a reasonable inference that follows from that fact.[5] The

privilege of such person, for a twenty-four-hour period. The police officer shall prepare a written report of the incident and shall mail the report and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. The report shall be made on a form approved by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both and shall state that such person had refused to submit to such test or analysis when requested by such police officer . . . ."

[5] The defendant's counsel stated on the record: "The other issue I have with the court's charge, as we spoke in chambers, relates to the refusal, and you talk about the evidence of the defendant's refusal to submit has been introduced. There was also evidence here that at one point in time he revoked that refusal, said I want to blow into the machine, and the police refused to conduct the test, so I'd ask that to be fair to the defendant that the court add a sentence right after where you say, if you find that the defendant did refuse to submit to such tests, you may make any reasonable inference that follows from that fact, that you add a statement that if you

court denied the defendant's request, and the defendant took an exception to the charge as given.[6] The jury returned a verdict of guilty, and this appeal followed.[7]

On appeal, the defendant argues that the court's instruction improperly deprived him of a theory of defense and was imbalanced in favor of the state. The defendant argues on appeal that the instruction improperly focused on his refusal to take the test without focusing on evidence that later he did request to take the test. The defendant argues that the court's failure to deliver the requested instruction deprived him of the opportunity to have the jury draw the inference that he knew he was innocent and was seeking to prove it by submitting to the test. This argument focuses on the issue of a defendant's consciousness of innocence in a jury charge regarding consciousness of guilt.

Our Supreme Court has stated that a defendant must assert a recognized legal defense to be entitled, as a matter of law, to a theory of defense instruction. Id., 545. We conclude that the defendant cannot do this.

---

find that the police refused to conduct the test after the defendant requested it, you may make a reasonable inference that follows from that fact, and I'd ask that to be fair to both sides."

[6] In accordance with the proposed instructions, the court instructed the jury in relevant part: "Evidence of the defendant's refusal to submit to a breath test has been introduced. Before you consider such evidence, you must be satisfied that there has been compliance with General Statutes § 14-227b (b), which provides as follows: If any person having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor and thereafter being apprised of his constitutional rights, having been requested to submit to a breath test at the option of the officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test, and having been informed that such person's license may be suspended, if such person refuses to submit to such test, that evidence of such refusal shall be admissible. If you find that the defendant did refuse to submit to such a test, you may make any reasonable inference that follows from that fact."

[7] The state does not fault the manner of the defendant presenting his request orally or his exception to the charge.

This court repeatedly has refused to apply the consciousness of innocence principle to jury instructions regarding a consciousness of guilt. In *State* v. *Holley*, 90 Conn. App. 350, 364–66, 877 A.2d 872, cert. denied, 275 Conn. 929, 883 A.2d 1249 (2005), this court upheld the trial court's refusal to give a consciousness of innocence instruction because the defendant voluntarily turned himself into the police after he fled the scene of the crime. This court held that the relevant precedent did not support the claim.

In *State* v. *Timmons*, 7 Conn. App. 457, 464, 509 A.2d 64 (1986), appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987), a similar argument and request to charge was made and rejected by the trial court. This court concluded that the surrender after flight of an accused is a factual argument that may be made in summation but does not support a theory of defense after flight, from which, as a matter of law, an inference of innocence may be drawn by the jury. Id., 466. The court stated that it had been unable to find any authority for such an instruction allowing such an inference. Id. Our Supreme Court dismissed the appeal in that case because this court's opinion fully and carefully considered the defendant's claims. See *State* v. *Timmons*, 204 Conn. 120, 526 A.2d 1340 (1987). A claim that absence of flight supports such an instruction was also rejected by the trial court and affirmed by this court in *State* v. *Jennings*, 19 Conn. App. 265, 271–73, 562 A.2d 545, cert. denied, 212 Conn. 815, 565 A.2d 537 (1989). Accordingly, we conclude that the defendant was not entitled to the theory of defense instruction that he sought because he did not assert a recognized legal defense at trial.

With respect to the defendant's claim that the court's jury instruction was imbalanced in favor of the state, our Supreme Court has held that a claim of impropriety as to an instruction concerning a permissive inference of consciousness of guilt is a claim of an evidentiary

nature rather than a constitutional one. *State* v. *Luster*, 279 Conn. 414, 421–22, 902 A.2d 636 (2006).

It is well established that when a challenge to a jury instruction is not of constitutional magnitude, as here, "the charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 106 Conn. App. 238, 253, 941 A.2d 989, cert. denied, 287 Conn. 903, 947 A.2d 343 (2008).

When giving a jury instruction, a trial court is not required to read verbatim applicable statutory language, so long as the court's instruction substantially complies with the statutory language and it is not reasonably possible that the jury was misled. See *State* v. *McCarthy*, 63 Conn. App. 433, 439, 775 A.2d 1013, cert. denied, 258 Conn. 904, 782 A.2d 139 (2001). A court, however, must deliver a jury instruction in a manner calculated to give the jury a clear understanding of the issues presented, under the offenses charged and on the evidence. *State* v. *Pinnock*, 220 Conn. 765, 789–90, 601 A.2d 521 (1992). A proper jury instruction must be balanced and fair. Id., 788, 792.

In *State* v. *Pinnock*, supra, 220 Conn. 791–93, our Supreme Court held that it was improper, although harmless, for the jury instruction not to include the defendant's request for language that would result in a more balanced instruction as to the absence of evidence

of motive to commit an offense for which the defendant was on trial.

In *State* v. *McCarthy*, supra, 63 Conn. App. 439, this court held that the trial court's instruction was adequate even though it was not identical to the language set forth in General Statutes (Rev. to 1997) § 14-227a (f).[8] In *McCarthy*, the court's instruction provided: "In order to draw an inference, however, you must find that the state . . . proved the fact from which you are to draw the inference beyond a reasonable doubt. . . . Now, if you find that the state has sustained its burden, you . . . must also make a determination whether or not the inference is logical . . . . [I]f you conclude from the evidence that the defendant refused to take [the breath] test . . . that's for you to determine whether or not the defendant refused to take the test. . . . If you find he didn't refuse, then you don't go on to that. Then there's nothing for you to decide." (Internal quotation marks omitted.) Id., 437–38. The instruction also provided that if the jury concluded that the defendant had refused to take the test, then it could also conclude that the test would have been unfavorable to his position. See id., 439.

The instruction in *McCarthy* required that before the jury could draw any inference, the jury had to determine that the defendant had refused the test. Looking at the instruction in its entirety, the court in *McCarthy* held that it was not reasonably possible that the jury was misled. Id. In this case, the defendant claims that he and the state contested at trial whether he had refused to submit to the Breathalyzer test and argues that the instruction was improperly imbalanced because the jury was not directed to consider his later willingness

---

[8] General Statutes (Rev. to 1997) § 14-227a (f), now (e), provides that the jury may or may not draw an inference from the defendant's refusal to submit to the test. *State* v. *McCarthy*, supra, 63 Conn. App. 439.

to take the Breathalyzer test. We conclude, however, that the court's jury instruction in this case properly and directly required the jury to find that the defendant had refused the test before the jury could draw an inference. Accordingly, we reject this argument.

The state argues that even if the instruction was imbalanced it was not harmful. We agree.

The law regarding the admissibility of evidence when a defendant refuses to submit to a Breathalyzer test and allowing jury instructions as to an inference to be drawn therefrom arises from the principle of consciousness of guilt. See id., 437–38. It is reasonable to infer that a refusal to take such a test indicates the defendant's fear of the results of the test. Id.; see also *State* v. *Albright*, 98 Wis. 2d 663, 298 N.W.2d 196 (Wis. App. 1980); *People* v. *Sudduth*, 65 Cal. 2d 543, 55 Cal. Rptr. 393, 421 P.2d 401 (1966), cert. denied, 389 U.S. 850, 88 S. Ct. 43, 19 L. Ed. 2d 119 (1967).

In *State* v. *Kelly*, 256 Conn. 23, 54, 770 A.2d 908 (2001), our Supreme Court observed that four inferences must be drawn regarding consciousness of guilt. As applied to this case, the consciousness of guilt doctrine requires (1) an inference from the conduct of the defendant to his denial to the prosecution of Breathalyzer evidence of his blood alcohol level, (2) from that denial to an inference of consciousness of guilt, (3) from that consciousness of guilt to an inference of consciousness of guilt as to having operated a motor vehicle while under the influence of alcohol and (4) therefrom to an inference of guilt of that offense. In this case, the consciousness of guilt inference required the jury to discern the defendant's state of mind when he refused to submit to the Breathalyzer test.

In *State* v. *Pinnock*, supra, 220 Conn. 792–93, our Supreme Court referred to language in the instruction that the jury consider all of the evidence in deciding

the issue of the defendant's guilt and found no prejudice to the defendant. In the present case, the court instructed the jury concerning inferences and circumstantial evidence as to a person's state of mind. In doing so, as in *Pinnock*, the court told the jury it must consider all of the evidence. As in *Pinnock*, the instruction in the present case did not instruct the jury that it could not consider the defendant's request to submit to the test. Finally, the court's instruction in this case did not inform the jury that it could draw a negative inference from a refusal to take a Breathalyzer test.

In *State* v. *Morelli*, 293 Conn. 147, 162, 976 A.2d 678 (2009), our Supreme Court stated that a refusal to take the Breathalyzer test could give rise to a statutory inference of guilt. In *State* v. *McCarthy*, supra, 63 Conn. App. 439, the court's instruction stated that the jury could conclude that the test would have been unfavorable to the defendant's position and could draw such an inference. In this case, the court merely informed the jury that it could draw an inference from his refusal.

On appeal, the defendant argues on the issue of harmfulness that without his requested instruction to counterbalance the court's instruction permitting the jury to draw a negative inference, he was prevented from having the jury consider drawing the opposite inference if it found that he had not refused the test. The defendant thus argues on appeal that the instruction was imbalanced and might have improperly led the jury to a "negative inference . . . ." The negative inference in this case would be that the defendant refused to blow into the Breathalyzer machine because he feared the result of the test. In this case, however, the defendant's trial attorney took a different tack than the defendant does on appeal. The defendant's counsel was present when the police videotape was played to the jury, and counsel did not contest before the jury the defendant's motive in refusing to submit to the test. Counsel stated in final

argument to the jury that although the videotape was unclear, the jury heard everything on the videotape when the defendant spoke to his father over the telephone. Counsel stated that the jury heard the defendant state that he had had two drinks but was sober and that his blood alcohol level "could be over point one or I could be under. But also I am sober. [It t]ells us . . . [that the defendant] was looking for counsel to advise him whether to take the breath test."[9] His counsel added: "They did allow him to call. Everyone knows it was after 1 a.m., and no one is in the attorney's office, so he's given his right to [an] attorney. He said, I'm not doing anything until I talk to an attorney. The police put it down as a refusal."[10] Defense counsel continued,

[9] The state claims that evidence of the defendant's statements of a similar nature appear on the audio portion of the videotape exhibit. The state invited us to listen to the videotape, but Gamache admitted in the trial record that the videotape had distortions "now and then" because of "skipping." Furthermore, the videotape was admitted into evidence and played in part to the jury. On remand from this court, because the evidentiary record by the court reporter did not contain the audio portion of the videotape, the parties stipulated as to the parts of the videotape played to the jury. There is, hence, no contemporaneous record by the court reporter of the audio portion of the videotape being played to the jury, the sole means of knowing, because of the nature of the videotape and its playing by some tape player, what was clearly transmitted to the jury in the courtroom as required.

[10] Defense counsel argued as follows: "With regard to the state law, there's additional rights, which [are], first, the officer must inform him of the implied consent, and then the officer must give him a reasonable opportunity to contact an attorney. So, you've got, you got [the defendant] being told by police officers, you got a right to counsel, and [the defendant] is saying, I don't know I really need an attorney. I need an attorney here now. I need to talk to an attorney. I need an attorney present. Very emphatic. He wanted his constitutional right, statutory rights to an attorney.

"The officers said, well, you know, you've got—we want an answer. I don't want to do anything until I speak to an attorney, which, under our law, is his right. Officers say, we don't have the number. He said, may I call my father? You heard [testimony from state police] Detective Christopher Bartolotta . . . . When suspects want to talk to an attorney, he gives them some privacy. Well, the reason we hear [the defendant] on the video is because there is no privacy there at [the University of Connecticut]. He was right there on the video, and we heard everything he was saying to his father.

"What we can gather from hearing him speak to his father, he was being lectured by his father. He told him I don't want a lecture. He told him he only had two drinks. That's contrary to what he told the officer. We also

stating that there was no question that at one point in time, near the end of the booking process, the defendant asked to blow into the machine. The defendant's counsel argued that the defendant asked three times, but the officer said no because it was too late. Counsel stated: "We have a video, and it showed that [the defendant] did ask to blow into the machine. . . . [He] had his one last chance near the end of the process . . . and the officer did not give him that chance."

There was evidence before the jury that a Breathalyzer is a scientific test for blood alcohol level that produces a number either above or below 0.08 percent, the level of alcohol in the blood necessary to establish that a driver was operating under the influence in April, 2005. There was also evidence that formerly that blood alcohol level was 0.10 percent and that the legislature had lowered it to 0.08 percent. See Public Acts, Spec. Sess., May, 2002, No. 02-1, § 108, effective July 1, 2002. The videotape, as described by the defendant's counsel, thus, was direct evidence in the defendant's words of his reason not to take the Breathalyzer test to avoid the risk of such evidence. Because the defendant's videotaped statements, as related by his counsel in argument, provided the jury with direct evidence of his motive and purpose in refusing to take the Breathalyzer

can infer he didn't want to hear the lecture. He also said I'm sober. He continued to say I'm sober. Everything we saw, could be over point one or I could be under. But also I am sober. What does that tell us? Tells us he doesn't know what the law is. It tells us he was looking for counsel to advise him whether to take the breath test. The police did not—again, Detective Bartolotta said, well, we give him a phone call. If he asks to speak to an attorney, we give him a phone. That wasn't allowed in this case. They did allow him to call. Everyone knows it was after 1 a.m., and no one is in the attorney's office, so he's given his right to an attorney. He said, I'm not doing anything until I talk to an attorney. The police put it down as a refusal. The officer did say, and he apologized, actually apologized, for he said I never—I did not tell [the defendant] that once he refused, he could not thereafter revoke and agree to take the test. I did not tell him that, and he apologized for that."

test, we conclude that the challenged jury instruction was harmless.[11]

"When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error." (Internal quotation marks omitted.) *State* v. *Sierra*, 213 Conn. 422, 436, 568 A.2d 448 (1990). Our Supreme Court recently stated that "[a] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Slater*, 285 Conn. 162, 190, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008).

We conclude with fair assurance that the failure to give the requested jury instruction did not substantially affect the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The defendant did not argue at trial and also does not argue on appeal that the police were required to afford him a Breathalyzer test after his previous refusal of the officer's request was witnessed and endorsed. See footnote 4 of this opinion. There is also no dispute that the officer did not repeat his request that the defendant submit to a Breathalyzer test after the refusal was witnessed and before the defendant asked to blow into the machine. In these circumstances, we need not consider that the statute requires an officer to repeat that request and perform the test after the officer and an endorsing witness have witnessed a refusal and signed the required form before the court could charge the jury as it did.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.