STATE OF CONNECTICUT *v.* SCOTT GORDON
(AC 23623)

Foti, Dranginis and McLachlan, Js.

Argued March 22—officially released August 17, 2004

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*Sarah Hanna,* special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Vernon D. Oliver,* assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Scott Gordon, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1). He also challenges his conviction on part B of the information, rendered by the court, of being a third time offender in violation of General Statutes (Rev. to 1999) § 14-227a (h) (3), now (g) (3). On appeal, the defendant claims that (1) the court improperly denied his motion to suppress evidence of his statements and conduct that were made to and in the presence of the police, (2) his conviction under § 14-227a (a) (1) is not supported by sufficient evidence, (3) the court improperly instructed the jury and (4) his conviction as a third time offender under § 14-227a (h) (3), now (g) (3), is not supported by sufficient evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 13, 2000, between four o'clock and six o'clock in the afternoon, the defendant drank several beers on an empty stomach. He then entered his motor vehicle and began driving from Waterbury, where he had been drinking, to his home in Bristol. At approximately 7:30 p.m., the defendant, traveling north on Union Street in Bristol, passed John McNellis, an officer in the Bristol police department, who was patrolling the area in his police cruiser. The defendant drove to the side of the road, which was marked clearly with several no parking signs, and remained stationary for approximately three minutes. McNellis was concerned about the hazard posed by the defendant's vehicle,

which obstructed part of the road and was parked in a no parking zone. He also was concerned that the operator of the vehicle might need assistance and, therefore, drove his police cruiser behind the defendant's vehicle and activated his overhead strobe lights. Peter Dauphinais, another officer with the Bristol police department who was also present in the area, parked his police cruiser behind McNellis' vehicle. McNellis then approached the defendant's vehicle and spoke with the defendant, who was in the driver's seat.

While engaging the defendant in a discussion to determine whether he required assistance, McNellis smelled alcohol on the defendant's breath and asked the defendant whether he had been drinking. The defendant, who was slurring his words, responded that he had had a couple of beers, at which point McNellis requested that the defendant recite the alphabet so that McNellis could make a preliminary assessment regarding the defendant's capacity to operate the motor vehicle. When the defendant was unable to perform the test adequately, McNellis asked to see his license, registration and insurance information. The defendant fumbled when retrieving those documents, and McNellis asked the defendant to step out of his vehicle in order to undergo several more field sobriety tests. McNellis evaluated the defendant's performance on the walk and turn test and the one leg stand test, both of which the defendant failed. Dauphinais, who observed the tests, additionally noticed that the defendant's eyes were glassy and bloodshot.

After determining that the defendant lacked the capacity to operate his vehicle safely, McNellis arrested him and took him to the police station for processing. At the police station, the defendant consented to taking an Intoxilyzer test, commonly referred to as a Breathalyzer test. While performing the test, however, the defendant covered the mouthpiece with his tongue,

thereby failing to provide an air sample for the machine to evaluate. McNellis recorded the defendant's failed attempt as a refusal.

The state charged the defendant with operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a) (1). At trial, the defendant filed a motion to suppress evidence that was gathered by the police when they approached his vehicle and spoke with him on the ground that the approach constituted a seizure that was not based on a reasonable and articulable suspicion. After an evidentiary hearing, the court denied the defendant's motion, finding that on the basis of the totality of the circumstances, the officers had a reasonable and articulable suspicion to approach the defendant's vehicle, which was parked in a no parking zone. During trial, the defendant also filed motions for a judgment of acquittal, which the court denied. The defendant subsequently was convicted and appealed to this court.

I

The defendant claims that the court improperly denied his motion to suppress the evidence that the police officers had gathered as a result of approaching his motor vehicle and speaking with him. The defendant argues that the officers lacked a reasonable and articulable suspicion to conduct an investigatory stop. In denying the defendant's motion to suppress, the court specifically found that the defendant was parked illegally in violation of General Statutes § 14-251 when the officers approached his vehicle and concluded that that violation provided the officers with a reasonable and articulable suspicion that a crime was being committed.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence

and pleadings in the whole record. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 503, 838 A.2d 981 (2004).

During the evidentiary hearing on the defendant's motion to suppress, the court heard testimony from McNellis, Dauphinais and the defendant. All three witnesses testified that the defendant's car had been traveling north on Union Street when the defendant, despite the presence of no parking signs, stopped his car for several minutes. In addition to being in a designated no parking zone, there was evidence that the defendant's car created a hazard, as it obstructed part of the road. On the basis of that evidence, the court found that the defendant "was in a no parking area." The defendant does not suggest that the court improperly found that he was in a no parking area, but rather argues that this type of traffic violation is not one on which the police may base an investigatory stop.

"An investigatory stop is authorized if the police officer has a reasonable and articulable suspicion that a person has committed or is about to commit a crime." (Internal quotation marks omitted.) *State* v. *Bolanos*, 58 Conn. App. 365, 368, 753 A.2d 943 (2000). Our Supreme Court has held that even minor traffic violations, such as the one at issue in this case, constitute crimes for which a valid investigatory stop may be made. See *State* v. *Lamme*, 216 Conn. 172, 175–76, 579 A.2d 484 (1990) (police made valid investigatory stop when defendant driving without headlights at night in violation of General Statutes § 14-96a); *State* v. *Donahue*, 251 Conn. 636, 742 A.2d 775 (1999) (en banc) (where there was no traffic violation or other independent indicia of criminal conduct, no reasonable and articulable suspicion

existed to support investigatory stop), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000). The court, therefore, properly concluded that McNellis had a reasonable and articulable suspicion to approach the defendant's vehicle because it was parked in a no parking zone.

Once McNellis approached the defendant's vehicle because of the traffic violation, he discerned the odor of alcohol on the defendant's breath, leading McNellis to request that the defendant engage in several field sobriety tests. "Once a lawful stop is made, a police officer's suspicions may become further aroused and the stop may be prolonged and the scope enlarged as required by the circumstances . . . ." (Internal quotation marks omitted.) *State* v. *Lamme,* 19 Conn. App. 594, 597–98, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990). Because he smelled alcohol on the defendant's breath, McNellis had a reasonable and articulable suspicion that the defendant had been operating his motor vehicle while under the influence of intoxicating liquor, which warranted an extension of the initial investigatory stop. That further investigation was a warranted extension of the initial investigatory stop. The court, therefore, properly denied the defendant's motion to suppress the evidence that was obtained pursuant to the investigatory stop.

II

The defendant also claims that the court improperly denied his motions for a judgment of acquittal. He argues that under § 14-227a (a) (1), the state could not meet its burden without (1) proof of erratic operation and (2) expert testimony on the effects of alcohol on the human body.[1] We conclude that the evidence, as

---

[1] General Statutes § 14-227a (a) provides in relevant part: "A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor or any drug or both . . . ."

presented, was sufficient to sustain the defendant's conviction.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Merriam*, 264 Conn. 617, 628–29, 835 A.2d 895 (2003).

"Driving while under the influence of liquor means, under the law of Connecticut, that a driver had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of his vehicle." (Internal quotation marks omitted.) *State* v. *Pulaski*, 71 Conn. App. 497, 503, 802 A.2d 233 (2002).

A conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a) (1) requires proof of (1) operation of a motor vehicle (2) on a public highway or one of the other designated areas (3) while under the influence of intoxicating liquor. *State* v. *Lonergan*, 16 Conn. App. 358, 366–67, 548 A.2d 718 (1988), aff'd, 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). The defendant's claim that the state failed to present sufficient evidence of *erratic* operation essentially inserts a new element into the offense.

"The definition of operation of a motor vehicle is well established. One need not drive a vehicle to operate it. . . . Operation occurs when a person in the vehicle intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." (Citation omitted; internal quotation marks omitted.) *State* v. *Wiggs*, 60 Conn. App. 551, 554, 760 A.2d 148 (2000). The definition of "operation" does not require the defendant to drive the car, which in turn indicates that the state does not need to present evidence of erratic operation in order satisfy the element of "operating a motor vehicle" under § 14-227a (a) (1). The defendant's claim that the state provided insufficient evidence to support the verdict on that point, therefore, fails.

The defendant, however, also suggests that the state has not presented sufficient evidence to support the verdict because it failed to present expert testimony to establish that he was under the influence of liquor, thereby questioning the sufficiency of evidence on the third element of § 14-227a (a) (1). We conclude that, for purposes of finding a violation of § 14-227a (a) (1), the state of being under the influence of intoxicating liquor is not a fact on which the state is required to present expert testimony.

"The condition of intoxication and its common accompaniments are a matter of general knowledge. . . . [The question of intoxication] is not a matter of opinion, any more than questions of distance, size, color, weight, identity, age, and many other similar matters are." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 124 Conn. 664, 667–68, 2 A.2d 374 (1938). Although there may be experts who can help the jury understand the defendant's performance on certain tests or who can expound on the effect of alcohol on an individual's motor skills, testimony of that nature is not required where other evidence, be it direct or circumstantial, is sufficient to establish that the defendant was under the influence of intoxicating liquor.

Here, McNellis and Dauphinais testified that the defendant smelled of alcohol, slurred his speech, fumbled when retrieving his paperwork and had glassy and bloodshot eyes. The officers testified that those observations led them to believe that the defendant was under the influence of alcohol and incapable of driving properly. The defendant admitted in his testimony that he had been drinking. Additionally, the jury was presented with evidence that the defendant failed two field sobriety tests and refused to take a Breathalyzer test, the admissibility of which he did not question.

Construing the evidence and the reasonable inferences drawn therefrom, we conclude that the jury reasonably could have found that the defendant was under the influence of intoxicating liquor. The court, therefore, properly denied the defendant's motions for a judgment of acquittal.

## III

The defendant's third claim is that the court improperly charged the jury by giving the standard instruction regarding a finding the jury could make on the evidence

of the defendant's refusal to take the Breathalyzer test and the permissible inferences that could be drawn therefrom. The defendant's claim is in two parts: (1) that if an instruction on a refusal were warranted, the court should have instructed that the jury could consider the defendant's refusal only if it first found that the officer performing the test had followed the procedures set forth in General Statutes § 14-227b (b) and (2) that the instruction on the inferences the jury could draw from the defendant's alleged refusal, coupled with the court's instruction on circumstantial evidence, lessened the state's burden of proof. We analyze each of those claims in turn.

## A

The defendant requested that the court not charge the jury on refusal or, in the alternative, include in the charge an instruction that the jury consider whether the officer had complied properly with the requirements of § 14-227b (b). The essence of the claim is that the jury could not make an inference regarding refusal until the court resolved in the state's favor the conflicting evidence presented at trial regarding the officer's compliance with § 14-227b (b).[2] That is purely an evidentiary claim, for the role of determining the admissibility of evidence is solely within the province of the court. See Conn. Code Evid. § 1-3 (a); see also *State* v. *Merriam*, supra, 264 Conn. 632 n.19. By not objecting, the defendant did not ask the court to conduct its gatekeeping function, and he could not request at a later time that

[2] The legislature structured General Statutes (Rev. to 1999) § 14-227a (f), now (e), so that the requirements of § 14-227b (b) need to be met as a precursor to the admissibility of chemical analysis tests, including Breathalyzer tests such as the one at issue here. See Public Acts 1983, No. 83-534, § 1.

Section 14-227a (f), now (e), provides in relevant part: "In any criminal prosecution for a violation of subsection (a) or (b) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible provided the requirements of subsection (b) of said section have been satisfied. . . ."

the question of admissibility be placed in the hands of the jury.

## B

The defendant claims that the jury instruction diluted the state's burden of proof.[3] In the challenged portion of the charge, the court stated in relevant part: "Evidence of the defendant's refusal to submit to a test, to a breath test, has been introduced. If you find that the defendant did refuse to submit to such a test, you may make any reasonable inference that follows from that fact." The defendant contends that the instruction permitted the jury to draw the conclusion that he refused to submit to the test and to consider that fact alone when determining guilt. The defendant claims that the instruction failed to impress on the jury the requirement that even when making permissible inferences, to find the defendant guilty, it must have found that the state proved guilt beyond a reasonable doubt.

"It is fundamental that proof of guilt in a criminal case must be beyond a reasonable doubt. . . . [Consequently, the] defendants in a criminal case are entitled to a clear and unequivocal charge by the court that the guilt of the defendants must be proved beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 370–71, 796 A.2d 1118 (2002). When a statutory scheme permits a jury to draw inferences on the basis of certain predicate facts, as does General Statutes (Rev. to 1999)

---

[3] The charge the defendant requested and the reasons for his exception to the charge at trial do not refer explicitly to his current contention that the instruction diluted the state's burden of proof, nor does he request review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant, however, properly preserved his claim that the court should not have given any instruction on refusal and raised the issue in his motion for a new trial. Because the record is sufficiently detailed, we will review the defendant's claim that the state's burden of proof was diluted by the charge.

§ 14-227a (f), now (e), it must be clear from the charge given to the jury that the inference is permissible, not mandatory, and the state still is required to prove the elements of the crime beyond a reasonable doubt. See *State* v. *Gerardi*, 237 Conn. 348, 356, 677 A.2d 937 (1996).

We have held that § 14-227a (f), now (e), permits the jury to draw reasonable inferences regarding a defendant's refusal to submit to a Breathalyzer test. See *State* v. *McCarthy*, 63 Conn. App. 433, 437, 775 A.2d 1013, cert. denied, 258 Conn. 904, 782 A.2d 139 (2001). In *McCarthy*, we also recognized that as long as the court in its instruction properly identified as permissible the inference the jury could draw and clearly instructed as to the state's ultimate burden of proof, it was unimportant that the court's language in the instruction did not mirror the statutory language. Here, the court instructed the jury that "you may make any reasonable inference," even though the statutory language states that "the court shall instruct the jury as to any inference that may or *may not* be drawn . . . ." (Emphasis added.) General Statutes (Rev. to 1999) § 14-227a (f), now (e). We conclude that it was not possible for the jury to be misled into believing the presumption was mandatory from the language used by the court.

The charge on circumstantial evidence that the defendant contends diluted the state's burden of proof when coupled with the charge on the permissible inference the jury could draw under § 14-227a (f), now (e), was as follows: "There are, generally speaking, two kinds of evidence, direct and circumstantial. Direct evidence is testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence, that is, proof of a chain of facts from which you could find that another fact exists, even though it has not been proven directly. There is no legal distinction between direct and circumstantial evidence as far as probative value; the law permits you to give

equal weight to both, but it is for you to decide how much weight to give to any particular evidence. By way of example, and this is only an example, if you awake up in the morning and you see that the sidewalk is wet, you may find from that fact that it rained during the night. Other evidence, such as a turned on garden hose, may, however, explain the water on the sidewalk. Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in light of reason, experience and common sense."

That jury instruction on circumstantial evidence is nearly identical to instructions on circumstantial evidence we have upheld. See *State* v. *Francis*, 83 Conn. App. 226, 239, 849 A.2d 873 (2004); *State* v. *Otero*, 49 Conn. App. 459, 465, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998); *State* v. *Johnson*, 44 Conn. App. 125, 133–34, 688 A.2d 867 (1997). We disagree with the defendant's contention that the challenged language, coupled with the court's instruction on the permissible inference the jury could draw under § 14-227a (f), now (e), diluted the state's burden to prove the defendant's guilt on each element of the offense beyond a reasonable doubt.

When determining whether a charge diluted the state's burden of proof, we do not look at the charge in isolation, but examine it within the context of the entire charge. *State* v. *Bailey*, 82 Conn. App. 1, 10, 842 A.2d 590, cert. denied, 269 Conn. 913, 852 A.2d 744 (2004). The court clearly and repeatedly instructed the jury that the state had the burden of proving each and every element beyond a reasonable doubt. The language directly following the challenged instruction specifically reminded the jury that to find the defendant guilty, it needed to find that the state proved each element beyond a reasonable doubt. In light of the instructions as a whole, we conclude that it was not reasonably

possible that the jury was misled as to the state's burden of proof.

## IV

The defendant's final claim is that there was insufficient evidence to support his conviction under part B of the information as a third time offender in violation of § 14-227a (h) (3), now (g) (3). The defendant contends that a certified copy of his conviction as a second offender was insufficient to prove beyond a reasonable doubt either his identity or the first of his previous convictions. The defendant conceded at oral argument that he failed to object to the evidence of his prior judgment of conviction on either of those points and also failed to make a motion for a judgment of acquittal. In fact, the record indicates that the defendant stipulated to the admission of his judgment of conviction as a second offender and, thus, he cannot claim now that the court improperly accepted that evidence.[4] See *State* v. *Cruz*, 269 Conn. 97, 105, 848 A.2d 445 (2004) ("[i]t is well established that a party who induces an error cannot be heard to complain about that error"). To the extent, however, that the defendant claims that the

[4] To the extent that the defendant claims that his first conviction cannot be proven by its inclusion in the judgment of conviction as a second time offender, he is mistaken. For the defendant to be sentenced as a second time offender under General Statutes (Rev. to 1999) § 14-227a (h) (2), now (g) (2), the court necessarily had to find that he had been convicted of a prior offense. That finding is embraced in the defendant's judgment of conviction as a second time offender. The defendant's first conviction having been actually litigated and necessarily determined for his conviction as a second time offender, the defendant's claim that his conviction as a second time offender cannot establish his first conviction necessarily is barred by collateral estoppel. See *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 714, 627 A.2d 374 (1993). We also note that defense counsel's tactical decision to stipulate to the admission of the certified copy of the judgment of prior conviction was sound, as the court could have admitted the certified copy of the judgment of prior conviction even without the stipulation. See *State* v. *Couture*, 151 Conn. 213, 219, 196 A.2d 113 (1963) ("[t]o prove a conviction, it is necessary to show it by the record of a valid, subsisting final judgment").

evidence was insufficient to support his conviction as a third time offender, we review it and conclude that the evidence was sufficient.

"Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted upon insufficient proof. . . . When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Henton*, 50 Conn. App. 521, 530–31, 720 A.2d 517, cert. denied, 247 Conn. 945, 723 A.2d 322 (1998).

Here, the state and the defendant stipulated to a certified copy of the July 21, 1993 judgment sentencing the defendant as a second time offender for violation of § 14-227a. The judgment of conviction shows a previous judgment of conviction for the same offense on November 27, 1989. The judgment lists his name, date of birth and the home address that he indicated was his residence when he was charged with the third offense. Unlike the situation in *State* v. *Gallichio*, 71 Conn. App. 179, 190, 800 A.2d 1261 (2002), in which we held that where the defendant's name, and nothing else, was identical to the name on the judgment of conviction, there was insufficient evidence to sustain the conviction, the court here had numerous indicators that the defendant was the same individual who had been convicted as a second time offender on July 21, 1993.

In construing the evidence in the light most favorable to sustaining the verdict, we conclude that the court reasonably could have concluded that the state proved

beyond a reasonable doubt that the defendant was a third time offender under § 14-227a (h) (3), now (g) (3).

The judgment is affirmed.

In this opinion the other judges concurred.