******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* ROBERT LEMANSKI
(AC 41785)

Bright, C. J., and Cradle and Suarez, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of operating a motor vehicle while under the influence of intoxicating liquor, the defendant appealed to this court. *Held*:

1. The defendant could not prevail on his unpreserved claim that his constitutional right to confrontation was violated when the trial court allowed C, the state trooper who arrested him, to testify that the defendant's son, L, told him that the defendant had consumed two drinks on the night that he was arrested; even if this court assumed that C's testimony was inadmissible hearsay that violated the defendant's right to confrontation, the defendant's claim failed under the fourth prong of *State* v. *Golding* (213 Conn. 233) because C's testimony was harmless beyond a reasonable doubt, as the state's case against the defendant was strong and L's statement to C was cumulative and unlikely to have influenced the jury's verdict.

2. The defendant could not prevail on his unpreserved claim that the trial court improperly instructed the jury regarding his alleged refusal to submit to a breath test at the time of his arrest:

   a. Contrary to the defendant's claim, the trial court did not commit plain error in instructing the jury that it could "make any reasonable inference that follows" from the defendant's alleged refusal to submit to a breath test, as the court's instruction substantially complied with the applicable statute (§ 14-227a (e)) and did not, when read in the context of the court's entire instructions, mislead the jury; moreover, the defendant implicitly waived his claim that the court's instruction diluted the state's burden of proof and violated his constitutional right to due process, as the court provided the defendant with a copy of its instructions thirteen days before the preliminary charge conference, the defendant had ample time to review the instructions, the court reviewed the instructions with counsel on the record, soliciting comments and proposed modifications, and both counsel affirmatively, and repeatedly, expressed their satisfaction with the court's instructions.

   b. The defendant's claim that the trial court committed plain error when it instructed the jury that his alleged refusal to submit to a breath test could be construed as consciousness of guilt because such an instruction was not factually supported by the evidence in view of the fact that he agreed to a blood test was unavailing: that court did not err in instructing the jury on consciousness of guilt, as C testified, without objection, that the defendant agreed to submit to a breath test, then changed his mind, vacillating several times before he requested a blood test, and, therefore, the court's instruction advising the jury of its obligation to determine whether the defendant refused the breath test was not only proper but was necessary; accordingly, the court's instructions to the jury pertaining to the consciousness of guilt evidence did not rise to the level of egregiousness and harm that would warrant reversal under the plain error doctrine.

Argued September 16—officially released November 17, 2020

*Procedural History*

Substitute information charging the defendant with the crime of operating a motor vehicle while under the influence of intoxicating liquor, brought to the Superior Court in the judicial district of Litchfield at Torrington and tried to the jury before *Noble, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed*.

*Laila M. G. Haswell*, senior assistant public defender,

for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Dawn Gallo*, state's attorney, and *Jonathan Knight*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, J. The defendant, Robert Lemanski, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1). On appeal, the defendant claims that (1) his constitutional right to confrontation under the sixth amendment to the United States constitution was violated when the trial court improperly admitted testimonial hearsay into evidence, and (2) the trial court improperly instructed the jury regarding his alleged refusal to submit to a breath test at the time of his arrest. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the night of December 30, 2016, Connecticut State Trooper Matthew Costella was on general patrol in the areas of Harwinton and Burlington. At approximately 9 p.m., he was sitting in his police cruiser in a church parking lot at the intersection of Routes 4 and 118, when he observed a passing motor vehicle that did not have its rear registration plate illuminated. Costella pulled out behind the vehicle, onto Route 4 heading eastbound toward Burlington, and followed it for approximately one mile, when he observed the vehicle cross over the white fog line. On the basis of his observations, the registration plate light infraction and the manner of operation of the vehicle, Costella turned on the emergency lights of his cruiser and pulled the vehicle over to the right side of the road. Another vehicle also pulled over ahead of the vehicle that Costella was stopping.

Costella approached the vehicle and asked the operator, the defendant, for his license, registration and insurance, to which the defendant responded, "That's a lot of questions." Costella then asked the defendant where he was coming from and the defendant stated that he was coming from Harwinton. When Costella asked where in Harwinton, the defendant responded that he was coming from the New Milford area, but then stated that he was coming from Torrington where he had played golf with his son, Steven Lemanski. During the foregoing exchange, the defendant searched for the documents that Costella had requested. Costella requested them a second time and referred the defendant to his wallet, which was located in plain sight on the passenger seat.

Costella asked the defendant if he had had anything to drink, and the defendant responded, "no, nothing." Costella noticed that the defendant's speech was slurred and his eyes were glassy. He advised the defendant that he could smell alcohol on his breath. When Costella asked the defendant if he had any medical conditions, the defendant responded that he did not. Costella conducted a test that he referred to as a "brief"

or "modified" horizontal gaze nystagmus test, looking for an involuntary jerking of the eyes, to determine if the defendant had been drinking. Costella told the defendant that he could see his eyes bouncing.

Costella asked the defendant if he knew who was in the vehicle that had pulled over ahead of them, and the defendant told Costella that it was Steven Lemanski. At Costella's request, the defendant used his cell phone to call Steven Lemanski and asked him to back his vehicle up to them. Once Steven Lemanski had backed up, Costella approached his vehicle and asked him if the defendant had any medical conditions, and he told Costella that the defendant did not. Steven Lemanski confirmed that they had been playing golf in Torrington and, when Costella asked if the defendant had consumed any alcohol that night, Steven Lemanski told him that the defendant had two drinks while he was with him.

After speaking with Steven Lemanski, Costella returned to his cruiser and called for backup so that he could conduct the standard field sobriety tests to determine if the defendant was intoxicated. After two additional troopers arrived, Costella performed three field sobriety tests—the horizontal gaze nystagmus test, the walk and turn test and the one leg stand test. When the defendant emerged from his vehicle, Costella observed that he was having trouble maintaining his balance. The defendant failed to perform any of the three tests to standard. On the basis of his observation of the defendant's operation of his vehicle, his observations of the defendant after he stopped the vehicle, and the results of the field sobriety tests, Costella determined that the defendant was under the influence of alcohol. Costella arrested him and transported him to the state police barracks for processing.

Upon arriving at the barracks, Costella advised the defendant of his rights and informed him that he would be requested to submit to a blood, breath or urine test, which must be administered within two hours of the time of his operation of the motor vehicle.[1] The defendant asked that he be allowed to contact an attorney, and he was permitted to call his wife to ask her for a telephone number of an attorney. Costella also looked up an attorney on the Internet at the defendant's request and provided him with telephone books so he could look up other attorneys. The defendant was unable to contact an attorney, and Costella asked him to submit to a breath test. The defendant first indicated that he did not want to take a breath test, then changed his mind and agreed to take a breath test, then changed his mind again and stated that he did not want to take a breath test. The defendant eventually told Costella that he wanted to take a blood test. Because the administration of a blood test must be done at a hospital, blood tests generally are not offered due to the two

hour window during which the test must be conducted. Costella thus continued to offer the defendant a breath test, while the defendant continued to request a blood test. Eventually another officer, Trooper Matthew Cashman, also offered the defendant a breath test, and the defendant refused.

The defendant was charged with and tried for operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) (1). Following trial, the jury found him guilty, and the court sentenced him to six months of incarceration, execution suspended after ten days, and eighteen months of probation. This appeal followed.

I

The defendant first claims that his sixth amendment right to confrontation was violated when the court allowed Costella to testify that Steven Lemanski told him that the defendant had consumed two drinks on the night that he was arrested.[2] We disagree.

The defendant claims that Costella's testimony regarding Steven Lemanski's statement constituted testimonial hearsay, the admission of which violated his constitutional right to confrontation and deprived him of a fair trial. The defendant did not object to Costella's testimony regarding Steven Lemanski's statement at trial. Because the defendant's claim is unpreserved, we review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015),[3] as the defendant requests in his appellate brief. Even if we assume, arguendo, that Costella's testimony regarding Steven Lemanski's statement was inadmissible testimonial hearsay that violated the defendant's right to confrontation, we conclude that his claim fails under the fourth prong of *Golding* because any alleged violation was harmless.

"Whether a constitutional violation is harmless in a particular case depends upon the totality of the evidence presented at trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless. . . . Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the [evidence] in the prosecution's case, whether the [evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [evidence] . . . and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. . . . The state bears the burden of proving that the error is harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Smith*, 156 Conn. App. 537, 561–62, 113 A.3d 103, cert. denied, 317 Conn. 910, 115 A.3d 1106 (2015).

Here, the state's case against the defendant was strong. Costella testified that, when he initially approached the defendant's vehicle, he noted a strong and distinct odor of alcohol emanating from the defendant, the defendant's eyes were glassy and his speech was slurred. The defendant had difficulty recounting where he was driving from and locating the documents that Costella requested, even though his wallet was in plain sight on the passenger seat. The defendant also failed all three of the field sobriety tests administered by Costella. The state presented expert testimony that, when an individual fails those three field sobriety tests, the likelihood of the impairment of that individual is between 91 percent and 95 percent. The video recording from the dashboard camera of Costella's cruiser was admitted into evidence, so the jury was able to observe the defendant when Costella stopped him, when he exited his vehicle and while he performed the field sobriety tests. Furthermore, Costella testified only that Steven Lemanski told him that the defendant had two drinks. He did not say that the defendant was intoxicated, what he drank, or when he consumed such drinks. Consequently, Steven Lemanski's statement was less probative than the evidence the jury heard and saw about the defendant's appearance, condition and conduct at the time his vehicle was pulled over by Costella. Because there was ample other evidence on which the jury could have based its guilty verdict, Steven Lemanski's statement to Costella, at most, was cumulative and was unlikely to have influenced the jury's verdict. We thus conclude that the admission of Costella's testimony regarding Steven Lemanski's statement that the defendant had consumed two drinks on the night of his arrest was harmless beyond a reasonable doubt. The defendant's claim thus fails under the fourth prong of *Golding*.

## II

The defendant also claims that the court improperly instructed the jury regarding his alleged refusal to submit to a breath test. The defendant's challenge to the court's instruction to the jury regarding his alleged refusal to submit to a breath test is twofold. First, he argues that the court improperly instructed the jury that it could " 'make any reasonable inference that follows' " from his refusal to take a breath test. Second, he contends that the court erred in instructing the jury on consciousness of guilt based on his alleged refusal to submit to a breath test. We are not persuaded.

On February 1, 2018, the court e-mailed counsel a copy of the instructions that it intended to give to the jury. On February 14, 2018, the court held a preliminary charge conference on the record, during which it indicated its intention to instruct the jury on consciousness of guilt. The court held a final charge conference, also on the record, the following day. Both parties expressly

indicated that they were satisfied with the court's instructions; neither sought any changes, nor voiced any objection.

Later that same day, the court instructed the jury. The court explained, inter alia: "You may draw reasonable inferences from the facts you find established in the case, the inferences that you draw, however, must not be from a guess upon the evidence, but they must be from a fact or facts which the evidence has established. In drawing inferences from the established facts, you should use your reason and common sense. The inferences that you draw must be logical and reasonable and not the result of speculation or conjecture."

As to consciousness of guilt, the court instructed the jury as follows: "This is a limiting instruction. In any criminal trial, it is permissible for the state to show that conduct or statements made by a defendant after the time of the alleged offense may have been influenced by the criminal act; that is, the conduct or statements show a consciousness of guilt. For example, acts or statements made in an attempt to avoid detection of a crime or responsibility for a crime or [were] influence[d] by the commission of the criminal act. Such acts or statements do not, however, raise a presumption of guilt. If you find the evidence proved and also find that the acts or his statements were influenced by the criminal act and not by any other reason, you may, but are not required to infer from this evidence that the defendant was acting from a guilty conscience. The state claims that the defendant was acting from a guilty conscience.

"The state claims that the following conduct is evidence of consciousness of guilt . . . the defendant's refusal to submit to the Breathalyzer test while at the police station. It is up to you as judges of the facts to decide whether the defendant's acts or statements, if proved, reflect the consciousness of guilt and to consider such in your deliberations and conformity with these instructions."

The court instructed the jury in detail on the elements of operating a motor vehicle while under the influence of intoxicating liquor and then summarized that "the state must prove beyond a reasonable doubt that [1] the defendant was operating a motor vehicle at the time and place alleged, and [2] he was under the influence of intoxicating liquor." The court also explained: "Evidence of the defendant's refusal to submit to a breath test has been introduced. If you find that the defendant did refuse to submit to such a test, you may make any reasonable inference that follows from that fact." After instructing the jury, the court asked counsel if they had any exceptions or issues with the final charge, and both expressly confirmed that they did not.

Because the defendant did not challenge the court's

instructions at trial, he seeks relief for portions of his claim under *Golding* on the ground that a constitutional violation deprived him of a fair trial. See footnote 3 of this opinion. For other portions of his claim, he seeks relief under the plain error doctrine. "The plain error doctrine is . . . reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he [or she] demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimension unless he [or she] demonstrates that it likely affected the result of the trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, 198 Conn. App. 530, 540, 233 A.3d 1197 (2020). With these principles in mind, we address the defendant's specific instructional claims in turn.

A

The defendant first claims that the trial court erred in instructing the jury that it could "make any reasonable inference that follows" from his alleged refusal to take a breath test. As to this instruction, the defendant claims that (1) the court committed plain error in so instructing the jury because it was "contrary to [§ 14-227a (e)] because it failed to explain precisely what the jury may infer and what it may not infer from such refusal," and (2) the court's instruction diluted the state's burden to prove every element of its case beyond a reasonable doubt and, thus, violated his constitutional right to due process because it "allowed the jury to infer solely from the refusal evidence that the defendant was under the influence." We are not persuaded.

1

The defendant claims that the trial court's instruction that the jury could draw any inference from the defendant's alleged refusal to submit to a breath test was plain error because it was inconsistent with the language of § 14-227a (e), which provides in relevant part: "In any criminal prosecution for a violation of subsection (a) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible . . . . If a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to *any inference that may or may not be*

*drawn* from the defendant's refusal to submit to a blood, breath or urine test." (Emphasis added.) The defendant argues that the "plain meaning [of the statute] is to direct trial courts to explain precisely what the jury may or may not infer. The court must make clear that the jury may infer only that the defendant had a guilty conscience, not that he is in fact guilty based solely on the refusal."

This court addressed this issue in *State* v. *Gordon*, 84 Conn. App. 519, 854 A.2d 74, cert. denied, 271 Conn. 941, 861 A.2d 516 (2004). In *Gordon*, the trial court instructed the jury, inter alia, as follows: "Evidence of the defendant's refusal to submit to a test, to a breath test, has been introduced. If you find that the defendant did refuse to submit to such a test, you may make any reasonable inference that follows from that fact." Id., 530. The defendant argued that "the instruction permitted the jury to draw the conclusion that he refused to submit to the test and to consider that fact alone when determining guilt" and "failed to impress on the jury the requirement that even when making permissible inferences, to find the defendant guilty, it must have found that the state proved guilt beyond a reasonable doubt." Id. In rejecting the defendant's claim, this court explained: "We have held that [General Statutes (Rev. to 1999)] § 14-227a (f), now (e), permits the jury to draw reasonable inferences regarding a defendant's refusal to submit to a Breathalyzer test. See *State* v. *McCarthy*, 63 Conn. App. 433, 437, 775 A.2d 1013, cert. denied, 258 Conn. 904, 782 A.2d 139 (2001). In *McCarthy*, we also recognized that as long as the court in its instruction properly identified as permissible the inference the jury could draw and clearly instructed as to the state's ultimate burden of proof, it was unimportant that the court's language in the instruction did not mirror the statutory language. Here, the court instructed the jury that you may make any reasonable inference, even though the statutory language states that the court shall instruct the jury as to any inference that may or *may not* be drawn . . . . We conclude that it was not possible for the jury to be misled into believing the presumption was mandatory from the language used by the court." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Gordon*, supra, 531.

As this court held in *Gordon*, and, earlier in *McCarthy*, we conclude that the court's instruction to the jury that it could "make any reasonable inference that follows" from the defendant's alleged refusal to submit to a breath test substantially complied with § 14-227a (e), and, when read in the context of the entirety of the court's instructions, which explained the elements that the state was required to prove beyond a reasonable doubt, did not mislead the jury. We thus conclude that the court did not err in so instructing the jury or that such an alleged error "was of such monumental proportion that it threatened to erode our system of justice

. . . or that it resulted in harm so grievous that fundamental fairness requires a new trial." (Internal quotation marks omitted.) *State* v. *Juan V.*, 191 Conn. App. 553, 574, 215 A.3d 1232, cert. denied, 333 Conn. 925, 217 A.3d 993 (2019).[4] Accordingly, the defendant's claim of plain error is unavailing.

2

The defendant also claims that the court's instruction permitting the jury to "make any reference that follows" from his alleged refusal to submit to a breath test diluted the state's burden of proof and, consequently, violated his right to due process. The state contends that the defendant implicitly waived this claim at trial. We agree with the state.

In *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), our Supreme Court held: "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." Id., 482–83.

In this case, the parties were given the court's proposed instructions on February 1, 2018, thirteen days prior to the preliminary charge conference on February 14, 2018. During that conference, which was held on the record, the court reviewed the instructions with counsel, proceeding page by page, and soliciting from counsel any questions or concerns about them. Both counsel voiced their satisfaction with each portion of the instructions as the court and counsel reviewed them together. The next day, the court provided counsel with a final copy of its intended instructions to the jury and held a final charge conference on the record. After the court noted on the record the minor edits that were made to the instructions, it asked if either counsel had any questions regarding those changes; both counsel indicated that they did not. The court then asked, once again, whether either counsel had "any additional request to charge any issues, changes, objections, exceptions, corrections to the final jury instructions." Both counsel indicated that they did not. After instructing the jury, the court asked counsel if they had any exceptions or issues with the final charge, and both confirmed that they did not.

Because the court provided the defendant with a copy of its instructions thirteen days before the preliminary charge conference, he had ample time to review them.

The court reviewed the instructions with counsel on the record, soliciting comments and proposed modifications, and both counsel affirmatively, and repeatedly, expressed their satisfaction with the court's instructions. We therefore conclude that the defendant implicitly waived his claim that the court's instruction diluted the state's burden of proof and violated his constitutional right to due process.[5] His claim therefore fails under *Golding*.

B

The defendant also contends that the court committed plain error when it instructed the jury that his alleged refusal to submit to a breath test could be construed as consciousness of guilt because such an instruction was not factually supported by the evidence in view of the fact that he agreed to a blood test. We disagree.

Faced with the same issue in *State* v. *Barlow*, 30 Conn. App. 36, 618 A.2d 579 (1993), this court reasoned: "[W]e cannot conclude that the trial court abused its discretion by allowing the jury to consider testimony on the issue of whether the defendant refused to take the breath test. As [General Statutes (Rev. to 1991)] § 14-227a (f) [now (e)] makes abundantly clear, evidence that the defendant refused to submit to a . . . breath . . . test . . . shall be admissible provided that the requirements of subsection (b) of [General Statutes § 14-227b] have been satisfied. Whether the defendant refused to take the breath test was an issue of fact for the jury. . . . Accordingly, the trial court did not abuse its discretion by submitting this factual issue to the jury.

"Furthermore, the trial court prudently instructed the jury on interpreting the evidence surrounding the attempted breath test. [General Statutes (Rev. to 1991)] § 14-227a (f) [now (e)] provides that [i]f a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a . . . breath . . . test. In instructing the jury, the trial court explained that the jury was free to draw any reasonable inferences in the event that it found refusal. The court proceeded to caution the jury that evidence of refusal *by itself* cannot support a guilty verdict. In short, on these facts, we are unable to discern an abuse of discretion by the trial court." (Citation omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) Id., 43–44.

As in *Barlow*, we cannot conclude that the trial court erred in instructing the jury on consciousness of guilt. Costella testified that the defendant agreed to submit to a breath test, then changed his mind, vacillating several times before he requested a blood test. That evidence was admitted without objection from the defendant and, accordingly, the jury was entitled to consider it.

The court's instruction advising the jury of its obligation to determine whether the defendant refused the breath test, therefore, was not only proper, but it was necessary. See *State* v. *Rodriguez*, 192 Conn. App. 115, 123, 217 A.3d 21 (2019). Accordingly, we conclude that the court did not err in so instructing the jury. We further conclude that the instructions pertaining to the consciousness of guilt evidence do not rise to the level of egregiousness and harm that would warrant reversal under the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See General Statutes § 14-227b (c).

[2] Neither the state nor the defendant called Steven Lemanski as a witness at trial.

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[4] We note that the instruction given by the trial court in this case and in *Gordon* is identical to that prescribed by the Judicial Branch's model criminal jury instructions. See *Snell* v. *Norwalk Yellow Cab, Inc.*, 332 Conn. 720, 763, 212 A.3d 646 (2019) ("language used in model jury instructions, although instructive in considering the adequacy of a jury instruction . . . is not binding on this court (citation omitted)).

[5] Although we do not reach the substance of this claim, we note that it too was rejected in *State* v. *Gordon*, supra, 84 Conn. App. 519. The court reasoned: "When determining whether a charge diluted the state's burden of proof, we do not look at the charge in isolation, but examine it within the context of the entire charge. . . . The court clearly and repeatedly instructed the jury that the state had the burden of proving each and every element beyond a reasonable doubt. The language directly following the challenged instruction specifically reminded the jury that to find the defendant guilty, it needed to find that the state proved each element beyond a reasonable doubt. In light of the instructions as a whole, we conclude that it was not reasonably possible that the jury was misled as to the state's burden of proof." (Citation omitted.) Id., 532–33. The court concluded: "We disagree with the defendant's contention that the challenged language, coupled with the court's instruction on the permissible inference the jury could draw under [General Statutes (Rev. to 1999)] § 14-227a (f), now (e), diluted the state's burden to prove the defendant's guilt on each element of the offense beyond a reasonable doubt." Id., 532.